## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| SCOTT HOUZENGA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12-4072 |
| CITY OF MOLINE, ILLINOIS, and TODD ALLEN, | ) ) ) ) |
| Defendants. | ) ) |

# **O R D E R**

This matter is now before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment [22] is granted.

## BACKGROUND

Plaintiff, Scott Houzenga ("Houzenga"), began his employment with the Moline Fire Department (the "Department") on September 8, 1997. On May 17, 2004, Heather Oepping ("Oepping") was hired as the first female firefighter on the Department. During his September 2008 annual evaluation, Houzenga commented that he felt he was subject to a hostile work environment from Oepping because he had given her poor evaluations of her work. In December 2008, he was offered a promotion to fire engineer at the central station, but declined because he did not want to work directly and on the same shift with Oepping and Battalion Chief Todd Allen ("Allen"), which whom Oepping was allegedly involved. In March 2009, Houzenga accepted a promotion to the position of fire engineer.

Following a verbal exchange with Allen on June 6, 2009, Houzenga made a verbal complaint that Allen was trying to cause an altercation. On August 21, 2009, Houzenga made another verbal complaint about a text message that Allen had sent. These complaints were conveyed to the union representative, Mike Strandlund, and reported to Chief Ron Miller.

On August 28, 2009, Oepping filed a sexual harassment complaint with Lieutenant David Schrock regarding a culmination of workplace incidents that made her feel intimidated. The City began investigating the complaints by both Oepping and Houzenga; the investigations were ultimately completed by Attorney Arthur Eggers. Houzenga's complaint was reduced to writing on November 6, 2009. On December 23, 2009, the investigation of Oepping's complaint concluded with a finding of no violation of the City's policies. There was, however, the recommendation of additional training for the fire department and particularly for Houzenga. On February 19, 2010, the investigation of Houzenga's complaint concluded with the finding of no violation of the City's policies by Allen.

On June 12, 2012, Houzenga filed a Complaint in the Circuit Court for Rock Island County, Illinois alleging claims of : (1) discrimination on the basis of gender; (2) retaliation; and (3) intentional infliction of emotional distress. The Complaint was removed to federal court, and Defendants have now moved for summary judgment. The motion is fully briefed, and this Order follows.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a

motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences reasonably drawn from the facts must be construed in favor of the non-movant. However, any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. The moving party has the responsibility of identifying portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the evidence on record could not lead a reasonable jury to find for the non-moving party, then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

## DISCUSSION

**Discrimination Claim**

Although Houzenga makes stray references to a hostile work environment in his Complaint, his cause of action is gender discrimination in the form of differential treatment

3

between himself and Oepping. The two methods for analyzing discrimination based on gender are the direct and indirect methods. "Under the direct method, the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 2012 WL 32062 at *5 (7th Cir.2012). *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983)("There will seldom be 'eyewitness' testimony as to the employer's mental processes."). Evidence under the direct method has been divided into two categories: "(1) ambiguous statements or behavior toward other employees in the protected group that taken altogether allow an inference of discriminatory intent and (2) evidence of systematically better treatment of employees outside the protected class." *Coffman v. Indianapolis Fire Department*, 578 F.3d 559, 563 (7th Cir. 2009). Houzenga does not argue that he has direct evidence of gender discrimination.

Under the indirect or burden-shifting method, the plaintiff must first make a *prima facie* showing that: (1) he was a member of a protected class; (2) he was meeting legitimate employment expectations; (3)she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably than he was. *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 662 (7th Cir. 2011). Additionally, in a reverse discrimination case such as this, the plaintiff must show background circumstances suggesting that the employer has a reason or inclination to discriminate against men. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999); *Gore v. Indiana University*, 416 F.3d 590, 592-93 (7th Cir. 2005). Once that showing is made, the burden shifts to the employer to proffer a non-discriminatory reason, and if it does, then the burden shifts back to the plaintiff

to show the reason is a pre-text.  Id.  It is not enough to disbelieve the employer's proffered reason, the fact finder must believe the plaintiff's explanation of intentional discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 210 S.Ct. 2097, 147 L.Ed.2d. 105 (2000).

Defendants argue that Houzenga cannot satisfy either the third or fourth prong of the test or make the additional showing of background circumstances, particularly given the fact that the Department is predominantly male and has only had two female firefighters since it came into existence.  An adverse employment action is one that "materially alters the terms and conditions of employment."  *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001).  The adverse action must be something more than a mere inconvenience or an alteration of job responsibilities.  *Rhodes v. Ill. Dep't of Transp.*, 359, F.3d 498, 504 (7th Cir. 2004).  "Not everything that makes an employee unhappy is an actionable adverse action."  *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

The Seventh Circuit has recognized three categories of adverse employment actions which are actionable: (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduce the employee's career prospects by preventing him from using his skills and experience, so that the skills are likely to atrophy and his career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the conditions in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe,

unhealthful, or otherwise significantly negative alteration in his workplace environment. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

The only arguable disciplinary actions initiated against Houzenga were the requirements that he be interviewed in connection with the allegations and participate in anti-discrimination training. No reprimand was placed in his file. He suffered no termination, demotion, reduction in salary, benefits, or responsibilities. He was compensated at an overtime rate for the one hour that he spent outside of his normal shift on the computerized training course.

Houzenga argues that the fact that his complaint was not investigated as promptly as Oepping's complaint is also an adverse employment action, "particularly since such investigation could have resulted in Plaintiff's demotion and/or termination." However, the fact is that the complaint was investigated and neither investigation resulted in any disciplinary action, suspension, demotion, or termination of Houzenga. He then refers to testimony by Chief Miller that the letter summarizing the results of the investigation was delivered to Houzenga but not to Oepping. Again, although the letters might be evidence of differential treatment, the mere receipt of this letter did not result in any humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment that could make the incident potentially actionable as an adverse employment action. Moreover, "Personality conflicts at work that generate antipathy" are not actionable under Title VII. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

Finally, Houzenga suggests that when interviewing for a promotion to the rank of lieutenant in 2012, his oral interview score was unexpectedly low despite his leadership experience and classes that he had taken, which "creates a clear inference that he was denied a

6

promotion as a result of invidious discrimination." However, the only record evidence cited in support of this brief claim is Houzenga's deposition, and his deposition testimony actually stated that he couldn't say for sure that his interviewer scored him low for any certain reason and that he didn't know why he received a low score on his oral interview. (Houzenga Dep. at 10-12) Houzenga made the promotion list, but was not ultimately selected. He does not know who was selected for the promotion or how their scores compared to his, and there is no indication that any of the superior officers involved in the 2009-10 situations were involved in the promotion decision more than two years later in 2012. Based on this testimony, no reasonable juror would make the leap from the fact that he received a lower oral interview score than he would have expected to the conclusion that he was denied a promotion as a result of invidious discrimination on the basis of his gender. "[O]ur favor toward the nonmoving party on summary judgment 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Brown v. Advocate South Suburban Hospital*, 700 F.3d 1101, 1108 (7th Cir. 2012)*, citing Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

Houzenga has therefore failed to demonstrate that he suffered any adverse employment action, and his discrimination claim fails. There is therefore no need to address the remaining elements of the prima facie case.

**Retaliation**

Like discrimination, retaliation may be shown through direct or indirect evidence. To prove retaliation under the direct method, Plaintiff must show: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the two. *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011);

7

*Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). A causal connection requires evidence that the protected activity was "a substantial or motivating factor" in the decision to take a materially adverse action against him. *Hoppe v. Lewis Univ.,* 692 F.3d 833, 842 (7th Cir. 2012). Retaliation may also be shown through the indirect, burden-shifting method, which requires proof that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) similarly situated employees who did not engage in the protected activity suffered no adverse employment action. *Squibb v. Mem. Med. Ctr.,* 497 F.3d 775, 788 (7th Cir. 2007).

Once again, as set out earlier in this Order, the establishment of a materially adverse employment action is a threshold that Houzenga is unable to establish. *See Brown*, 700 F.3d 1101 (finding that allegations that the employer was treating plaintiffs unfairly, ignoring their complaints, wrongfully calling them cry babies/trouble makers, and left the real wrongdoers undisciplined in any way were insufficient to demonstrate a materially adverse employment action.) He has simply failed to show that he suffered an action that might dissuade a reasonable worker from making or supporting a charge of discrimination as required under the precedent in this circuit. *Id.*, at 1106-07. Since he cannot establish that he suffered an actionable adverse employment action, his claim necessarily fails under either the direct or indirect method. Summary judgment for the Defendant is also proper as to the retaliation claim.

**Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress under Illinois common law, Plaintiff must allege that: (1) Defendant's conduct was extreme and outrageous; (2) Defendant intended to inflict severe emotional distress or knew there was a high probability

8

that their conduct would cause severe emotional distress; and (3) Defendant's conduct did cause severe emotional distress. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Doe v. Calumet City*, 641 N.E.2d 498,506 (Ill. 1994); *McGrath v. Fahey*, 533 N.E 2d 806,809 (Ill. 1988).

Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency…" *Public Finance Corp. v. Davis*, 360 N.E. 2d 756,767 (Ill. 1976); *Kolegas v. Heftel Broad Corp.*, 607 N.E. 2d 201, 211 (Ill. 1992). Moreover, "as to the third prong, an action may lie 'only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *See McNamara v. Guinn*, 2000 WL1222128 at *3-4 (N.D. Ill. August 23, 2000), *citing McGrath*, 533 N.E.2d at 809. Put another way, this standard is quite high, and in order to meet the threshold, "the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Lewis v. School District #70*, 523 F.3d 730, 748 (7th Cir. 2008).

Here, Houzenga contends that he was "subjected to a pattern of verbal abuse and illegal conduct, including being victimized by favoritism, denied promotions, and having legitimate complaints of harassment ignored for months." That being said, it is well-settled that indignities, threats, annoyances, petty oppressions, and other trivialities fail to qualify as outrageous conduct actionable in an IIED claim. *Id.*, at 747-48. The verbal altercations and text involving Houzenga and Allen clearly fall into the kind of workplace trivialities that are legally insufficient to support an IIED claim. Additionally, the Court has found that there is insufficient evidence in the record to support any claim based on a denial of promotions in this

case. During the time of the altercations in question, the record indicates that Houzenga declined one promotion and accepted another, and the record is devoid of evidence indicating that Allen played any role in the promotion decision more than two years later in 2012. This leaves the claim that Houzenga had legitimate complaints of harassment ignored for months and that he was served notice of interrogation by a uniformed officer at his place of work.

Houzenga has not set forth evidence supporting the reasonable inference that Allen had any control over the speed or process of the investigations in this case. Rather, the record indicates that both Oepping and Houzenga's complaints were received by Amy Valdes ("Valdes"), the City's Human Resources Manager. Testimony from former Chief Ronald Miller indicates that Valdes determined how the investigations of the internal complaints would proceed and that her determination of how the investigations should proceed changed after receiving the cross-complaint by Oepping. Investigation was ultimately conducted by outside counsel, who had been told by Valdes to proceed with an investigation of both claims. There is no indication that Allen was involved in determining the manner in which the notices of interrogation would be served, how the investigations would proceed, or the ultimate results of the investigations. "IIED is not meant to redress a plaintiff's frustration with ordinary administrative processes or delays," yet this is all that Houzenga has alleged. *Brest v. Lewis*, 2009 WL 4670649, at *3 (N.D.Ill. Dec. 7, 2009). Accordingly, the Court concludes that he has failed to demonstrate the kind of extreme and outrageous conduct necessary to support an IIED claim against Allen.

Moreover, even if Allen's conduct could pass this initial threshold, Houzenga has not established that he suffered severe emotional distress as a result. To the contrary, he admits that he has not sought any psychiatric treatment or mental health services and missed only one day of

work because he "didn't want to be [there]." Other than this one day when he called in sick, there have been no other times when Houzenga was unable to carry out the duties or responsibilities of his employment. "[A]lthough fright, horror, grief, shame, humiliation, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006). Houzenga's allegations do not reveal any physical ramifications or need for medical treatment and cannot reasonably be construed as anything more than the "humiliation and indignities . . . mental, and emotional pain and suffering" that have repeatedly been found insufficient to demonstrate the level of emotional distress necessary to support an IIED claim. *See McGrath*, 533 N.E.2d at 808 (finding severe emotional distress where the plaintiff had shown physical ramifications and medical treatment); *Pavilon v Kaferly*, 561 N.E.2d 1245, 1252 (1st Dist. 1990); *Karkomi v. American Airlines, Inc.*, 717 F.Supp. 1340, 1345 (N.D.Ill. 1989); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (1st Dist. 1999). His IIED claim is therefore without merit.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment [22] by Defendants is GRANTED. This matter is now terminated, and all existing deadlines are vacated.

ENTERED this 14th day of April, 2014.

                                            s/ James E. Shadid
                                            James E. Shadid
                                            Chief United States District Judge